UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:05CV-00011-JHM

VAN MOONEY, JR.                                                                               PLAINTIFF

vs.

ALCAN ALUMINUM CORPORATION
and ALCANCORP EMPLOYEE BENEFITS COMMITTEE         DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court upon motions for judgment on the administrative record [DN 20, DN21]. For the reasons discussed below, judgment is granted in favor of Defendants, Alcan Aluminum Corporation and Alcancorp Employee Benefits Committee.

**I. Statement of Facts**

Plaintiff Van Mooney Jr. worked at Alcan Aluminum Corporation's Sebree Plant in Henderson, Kentucky from 1973 until December 18, 2000. Alcan fired Mooney for violating the company's drug and alcohol policy. Mooney was a repeat violator of the policy, and the results of a drug test given on December 8, 2000 were conclusive that he tested positive for marijuana. After Alcan dismissed Mooney, he briefly worked in a temporary position for another company. He left the temporary position for reasons that are unclear, and soon applied for Social Security Disability Insurance.

In March and April of 2001, Mooney was examined by Social Security Administration doctors. One of the Social Security doctors opined that Mooney was "extremely angry and depressed over the loss of his job." (Record, p. 244). Further, the doctor explained that she

believed that Mooney would be "unable to appropriately interact with peers and supervisors at work." Id. The report of a different Social Security doctor noted that Mooney was "distressed," but the second physician drew fewer conclusions as to Mooney's ultimate status. The two reports contained notable differences. (Record, p. 247). For instance, one report noted that Mooney had been hospitalized for depression on two occasions, and that he had only one daughter. The other report, however, indicates that Mooney has three children, and that Mooney had been fired two years prior to March, 2001. There are multiple discrepancies in the medical reports. Nonetheless, their conclusions ultimately led to an award of disability insurance from the Social Security Administration.

Almost three years after Mooney's dismissal from Alcan, in September of 2003, he applied for a disability pension from Alcan. Defendant Alcan Aluminum has a pension plan which is administered by Co-Defendant Alcancorp Employee Benefits Committee (Alcancorp). Mooney's request for disability benefits was brief. (Record, pp. 34-40). The application noted that Mooney had been treated by a physician since January, 1996. (Id. at 36). But the application did not explain when Mooney became disabled, nor was information about Mooney's prior treatment attached. Having examined the information provided, Alcancorp requested that Mooney provide further information in support of his request. (Id. at 41).

The Alcan Benefit Plan, administered by Alcancorp, defines permanent and total disability as "total disability from bodily injury or disease so as to be physically prevented thereby from engaging, for remuneration or profit, in any occupation or employment . . . ."

(Alcan Aluminum Corporation, Sebree Hourly Pension Plan, § 3.2 (d)(I), (Record, p. 63)). Thus, for Mooney to substantiate his application for disability benefits, he needed to prove two things. First, he needed to prove that he was permanently disabled and unable to work for money. Second, he needed to establish that he was permanently disabled as of his date of termination in December, 2000. Despite Alcancorp's request for Mooney to provide further information regarding his alleged disability, no information was provided. Alcancorp then denied Mooney's application for disability based on lack of proof. Alcancorp rendered this initial decision in November, 2003. (Id. at 43).

Shortly afterwards, in March, 2004, Mooney appealed his denial of disability benefits. (Id. at 44). The only evidence provided in addition to his first application was a February, 2004 letter from his treating physician, Dr. Anthony L. Hall. The letter stated that "Mr. Mooney's diagnoses of adjustment disorder with paranoid ideation and depressions were entertained in September 1999; subsequent visits were related to this diagnosis." (Id. at 45.)

Pursuant to the terms of Alcan's Pension Plan, when a claimant appeals his determination of disability, the matter is forwarded to a Medical Board for reconsideration. (Alcan Aluminum Corporation, Sebree Hourly Pension Plan, § 6.2-6.3 (Record, pp. 66-71)). The plan's provisions for a Medical Board are specific. The Board is to be composed of three physicians. The first is to be appointed by the company, the second physician is to be appointed by the claimant, and these two physicians are jointly to select the final member of the board. (Alcan Aluminum Corporation, Sebree Hourly Pension Plan, § 6.3 (Record, p. 69)). Alcan quickly appointed a physician to the Board. Mooney appointed his treating

3

physician, Dr. Hall. Correspondence indicates that Dr. Hall agreed to provide the names of three candidates whom he found suitable to participate as the third member of the board. (Record, p. 72). Following Alcan's numerous contacts and attempted contacts to Mooney's counsel and to Dr. Hall, no progress ensued in suggesting a physician to complete the Board. In response to the lack of communication, Alcan dissolved the Medical Board and terminated the appeal in September, 2004. Mooney's appeal was denied. (Record, p. 76). In January, 2005, Mooney filed this suit.

Following disagreement as to whether all administrative remedies had been exhausted, the parties to this suit agreed to reinstate the Medical Board. Mooney once again appointed his treating physician to the board. Alcan appointed a physician, and the two physicians agreed upon a third member of the Board. In making its decision, the Medical Review Board considered, among other documents: Mooney's application for benefits; a summary of Mooney's employment history at Alcan, which explained that drug use was the reason for his termination; the Alcan Pension Plan; a deposition of Mooney; and Mooney's Social Security file. After reviewing the information, the Board prepared a report. (Record, pp. 285-289). In the report, the Board noted that beginning in March of 1996, Mooney had experienced increasing degrees of paranoid thinking, but that the paranoia did not prevent Mooney from working. The Board also considered Mooney's uncontrolled diabetes and complaints of back pain. The report stated that Mooney was "working regularly and without complaint or disability" until he was dismissed for repeated drug use. Having considered these matters, as well as considering that the Social Security Administration had determined

Mooney to be disabled, the Board reached a decision. The Board unanimously concluded that according to the Alcan Pension Plan's definition of disability, which requires proof that Mooney was unable to work for money at the time of his dismissal, Mooney was not permanently and totally disabled on his date of termination. All three members of the Board, including Mooney's treating physician, concurred in this result. Following the Board's determination, the parties filed briefs in this matter, and the case is ripe for decision.

## II. The Employment Retirement Income Security Act governs this case

This matter is governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1001 et seq. The United States Supreme Court has indicated that § 1132 of the statute, which outlines the causes of action available to claimants, was intended by Congress to be the "exclusive remedy" for rights guaranteed under ERISA. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 144 (1990). This is particularly true in situations where, as here, the claims revolve around the denial or recovery of benefits under an ERISA benefit plan. Pilot Life Ins. Co. V. Dedeaux, 481 U.S. 41 (1987). Hence, Mooney's sole remedy in this case falls under the provisions of ERISA.[1]

## III. Standard of Review

Although ERISA expressly provides for a private cause of action to recover benefits alleged to be due under a benefit plan, the statute is silent as to what standard of review the

---

[1] 29 U.S.C. § 1332 (a)(1)(B) provides:
A civil action may be brought–
(1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . .

Court is to apply in reaching a decision on the merits of such a claim. In order to determine the appropriate standard of review, the Court must ascertain whether the plan has vested Defendant with discretion to determine eligibility for benefits. A plan administrator's denial of benefits under an ERISA plan "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. V. Bruch, 489 U.S. 101, 115 (1989); see also Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 613 (6th Cir. 1998). On the other hand, if the plan vests discretionary authority in the plan administrator, the Court reviews the denial of benefits under an arbitrary and capricious standard of review, and bases its determination upon a review of the administrative record. See Perez v. Aetna Life Ins. Co., 150 F.3d 550, 555 (6th Cir. 1998)(en banc); Wilkins, 150 F.3d at 613.

There are no "magic words" that determine when a plan has vested the administrator with discretion to construe the terms of the plan. Perez, 150 F.3d at 555. Nonetheless, the grant of discretion must be clear. Wulf v. Quantum Chemical Corp., 26 F.3d 1368, 1373 (6th Cir. 1994). The Alcan plan reads:

> The Administrator and Employing Company . . . shall have full power and authority to construe the provisions of the Plan, to resolve any ambiguities, errors, inconsistencies or omissions herein, to determine any questions of fact which may arise hereunder, to determine the right to benefits and amount of benefits, if any, payable to any person under this Plan, and the Administrator shall also have full power and authority to make such rules and regulations regarding the Plan and administrative matters, including but not limited to rules governing the manner in which the Administrator shall act or in which the Administrator's own affairs shall be managed, as the Administrator may

deem necessary or appropriate in the exercise of its authority hereunder.

Alcan Aluminum Corporation, Sebree Hourly Pension Plan, § 5.3 (Exhibit A to Brief for Defendants).

In 2003, the Sixth Circuit held that an administrator had discretion to interpret the plan when the plan gave the administrator "complete control," the "power to construe," and the power to "determine all questions" arising under the plan. Shields v. Reader's Digest Ass'n, 331 F.3d 536, 541 n. 6 (6th Cir. 2003). In Shields, the Sixth Circuit found that the discretion granted to the plan administrator triggered a review under the arbitrary and capricious standard. Given that the language in the Alcan plan is significantly similar to that considered in Shields, the Court finds the arbitrary and capricious standard applies in this case as well.

Having established the appropriate standard of review, the Court must now determine whether Alcan's decision to deny Plaintiff's claim for permanent and total disability benefits was proper. "The arbitrary and capricious standard is the least demanding form of judicial review of administrative action." Hunter v. Caliber Systems, Inc., 220 F.3d 702, 710 (6th Cir. 2000). An administrator's determination to deny benefits which is rational and based upon a reasoned explanation for the outcome must be upheld. Williams v. International Paper Co., 227 F.3d 706, 712 (6th Cir. 2000). In other words, a decision is not arbitrary and capricious when "it is possible to offer a reasoned explanation [for it], based on the evidence." Killian v. Healthsource Provident Administrators, Inc., 152 F.3d 514, 520 (6th Cir. 1998).

### IV. Discussion

Mooney argues that Alcancorp's denial was arbitrary and capricious because Alcancorp disregarded the medical opinion of Dr. Hall, Mooney's treating physician. Mooney also suggests that because he was deemed to be disabled by the Social Security Administration, it is in error for Alcancorp to deny disability coverage. Further, Mooney asserts that it would be impossible for any person with a mental disability to be considered disabled according to the language of the plan. Alcan disagrees. These arguments will be addressed in turn.

### 1. The opinion of a treating physician is not afforded greater weight than the opinion of other physicians.

Mooney argues that the opinions and records of his treating physician, Dr. Hall, establish that Mooney had a disability prior to his termination at Alcan. Mooney further argues that the opinions of Dr. Hall should have been granted deference during the administrative process.

The Supreme Court has held that plan administrators are not obliged to accord special deference to the opinions of treating physicians. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825 (2003). In determining whether a claimant is entitled to Social Security disability benefits, special weight is given to opinions of the claimant's treating physician. See 20 C.F.R. § 404.1527(d)(2); 416.927(d)(2). But this does not also apply in ERISA cases. While a plan administrator "may not arbitrarily reject or refuse to consider the opinions of a treating physician," the administrator is not required to pay special deference to a treating physician. Calvert v. Firstar Finance, Inc., 409 F.3d 286, 293 (6th Cir. 2005)(citing Black

8

& Decker, 538 U.S. at 825). Thus, it was not necessary for Alcancorp or the Medical Board to give special weight to Dr. Hall's opinion. All relevant considerations could be taken into account when assessing the alleged disability of Mooney.

In addition to arguing that Dr. Hall's opinions should be given special weight, Mooney argues that the records and opinions of Dr. Hall conclusively established that Mooney had a permanent and total disability in December, 2000. The records of Dr. Hall do establish that Mooney has health problems. The medical records reflect that in 1996, Dr. Hall noted Mooney's emotional problems; and that in September, 1999, Dr. Hall diagnosed Mooney with adjustment disorder. But contrary to Mooney's arguments, the records of Dr. Hall do little, if anything, to substantiate that Mooney was permanently and totally disabled in December of 2000. The substantiation of adjustment disorder in September of 1999 does not establish that Mooney was unable to work for remuneration or that he was permanently and totally disabled, as required by the Alcan Plan to determine a person is disabled. Dr. Hall has continually treated Mooney for his physical and psychological problems. But Dr. Hall agreed with the other physicians on the Medical Board that Mooney was not disabled at the time of his termination from Alcan. Not only was it unnecessary to give Dr. Hall's opinion special weight, the doctor's concurrence in the decision of the Medical Board shows that his opinion does not further Mooney's position. Thus, the decision of the Medical Board was not arbitrary and capricious.

  **2. A decision that Mooney was entitled to Social Security Disability Insurance does not mandate that Mooney was permanently and totally disabled on his date of termination.**

A few months after Mooney was fired at Alcan, in the spring of 2001, the Social Security Administration determined that he was disabled and awarded him disability benefits. Mooney suggests that Alcancorp and the Medical Board necessarily believed, therefore, that his disability developed in a mere four months, between his date of termination and the Social Security determination. While the Social Security Administration's determination is probative as to whether Mooney was disabled only a few months earlier, it does not establish the prior presence of a disability. See Calvert v. Firstar Finance, Inc., 409 F.3d 286, 294 (6th Cir. 2005)(the determination of disability by the Social Security Administration is not binding, but should not be disregarded). The record reflects that the Medical Board considered the findings of the Social Security Administration. Further, a reasonable person could surmise that Mooney was not permanently and totally disabled in December, 2000. It is reasonable to believe that Mooney had experienced only minor health problems prior to December, 2000, but that the problems quickly multiplied following his termination from Alcan. The Medical Board believed that to be true. The Court must consider the complete record, including the Social Security Administration's award of benefits, in determining whether Alcan Benefits' denial of benefits was arbitrary and capricious. Id. at 295-97. The Medical Board reported that Mooney had an increasing degree of paranoid thinking from 1996 onward. Mooney argues that the Medical Board did not properly consider "Plaintiff's spasmodic disruptive actions over the years since 1996 that finally resulted in his termination." The record is clear that Mooney's drug use, rather than "spasmodic disruptive actions," led to his termination. Alcancorp and the Medical Board may have reasonably

10

concluded that the stress of Mooney's termination accelerated the advancement of his paranoia and mental illness. The record reflects that Mooney's condition worsened between his dismissal from Alcan and the Social Security Administration's determination. Therefore, the Court concludes that the decision of the Medical Board was not arbitrary and capricious.

### 3. It is irrelevant whether the plan makes specific provisions for persons with mental illnesses.

Mooney argues that a person with a mental illness could never be considered disabled under the Alcan plan. As a matter of law, this assertion does not have merit. This case is not governed by the American's Disability Act (ADA), but its language provides guidance here. In 1997, the Sixth Circuit held that the ADA does not require a company to provide equal disability benefits for mental illness and physical illness. Parker v. Metropolitan Life Ins. Co. 121 F.3d 1006 (6th Cir. 1997). The ADA does not demand equality between persons with different types of disabilities. Id. at 1015. In 1996, Congress enacted the Mental Health Parity Act, 42 U.S.C. § 300gg-5, amending the Health Insurance Portability Act. 42 U.S.C. § 300gg. The Mental Health Parity Act mandated that health insurance plans apply the same benefit limits to mental illnesses and physical illnesses. Parker, 121 F.3d at 1018. But the Health Insurance Portability Act exempts "disability income insurance" from its control. 42 U.S.C. § 300qq-91(c)(1)(A); Parker, 121 F.3d at 1018. Thus, Congress implicitly acknowledged that there is no requirement for disability benefits to be equal for mental and physical illnesses. Id.

This Court located numerous ERISA cases where the plans at issue had limiting

11

provisions for mental illnesses. In none of these cases did the courts find that the language of the plan created a problem as a matter of law. See, e.g., Lynd v. Reliance Standard Life Ins. Co., 94 F.3d 979 (5th Cir. 1996)(acceptable to limit benefits for mental illness to twenty-four months); Olson v. Comfort Systems USA Short Term Disability Plan, 407 F.Supp. 2d 995 (W.D. Wis. 2005)(plan had two year limitation on mental illness). The considerations of Congress and multiple federal courts indicate that a plan administrator is not required to treat mental illnesses in the same manner that it treats physical illnesses.

Mooney argues that under that Alcan plan, it would be impossible for a person with a mental illness to be considered totally and permanently disabled. Mooney concedes that he was not "physically" prevented from engaging in occupation. That is the requirement of the Alcan plan, however, and the plan must be enforced as written. As discussed above, it is not necessary for a pension plan to provide disability benefits for mental illness. Nonetheless, this Court believes the Alcan plan could allow a mentally ill person to be considered permanently and totally disabled. The language of the plan defines permanent and total disability as "total disability from bodily injury or disease so as to be physically prevented thereby from engaging, for remuneration or profit, in any occupation or employment . . . ." (Alcan Aluminum Corporation, Sebree Hourly Pension Plan, § 3.2 (d)(I), (Record, p. 63)).

As the plan states, not only a "bodily injury" may render a person disabled, but rather, disability may be caused by "disease" as well. While the plan did not define "disease," Random House defines "disease" as "a disordered or incorrectly functioning organ, part,

12

structure, or system of the body resulting from the effect of genetic or developmental errors, infection, poisons, nutritional deficiency or imbalance, toxicity, or unfavorable environmental factors; illness; sickness; ailment." Random House Unabridged Dictionary 564 (Stuart Berg Flexner, ed., 2d ed. 1993). Because disease is defined according to impaired functioning, it appears that mental illness fits within the definition of disease. The language of the Alcan plan does not exclude persons with mental illnesses from receiving disability benefits.

## V. Conclusion

The record indicates that Mooney had some psychological problems prior to his termination at Alcan. It further indicates that Mooney is currently disabled and unable to work. What is lacking is evidence that he was disabled on the date of his termination. Based on the nature of his psychological problems, the record reflects that Mooney's dismissal from Alcan pushed him into a downward spiral of deterioration. It appears that Mooney did not have a disability at the time he was dismissed. Thus, the decision of the Medical Board and Alcancorp in denying benefits to Mooney was reasonable and was not arbitrary and capricious.

Further, even if this case had been subjected to the scrutiny of a de novo review, the result of this suit would be the same. The record is devoid of conclusive evidence that Mooney had a permanent and total disability as of December 18, 2000. For the reasons set forth above, **it is hereby ordered** that judgment on the administrative record in favor of

defendants is **GRANTED** [DN 20, 21].

cc: Counsel of Record